IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-01899-RBJ-KLM

JEFF BENTON, individually, and
ZOO FANS, INC., a Colorado corporation,

       Plaintiffs/Counterclaim Defendants,

v.

AVEDON ENGINEERING, INC., a Colorado corporation,
AIRIUS IP HOLDINGS, LLC, a Colorado limited liability company, and
AIRIUS, LLC, a Colorado limited liability company,

       Defendants/Counterclaimants/Third-Party Plaintiffs,

v.

WILLIAM F. BUELL, JR., an individual,
HUNTERS GREEN MARKETING, INC., a Kentucky corporation, d/b/a Buell and Buell, and
CORY R. COCHRAN, an individual,

       Third-Party Defendants.

_____

# ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

       This matter is before the Court on **Plaintiffs/Counterclaim Defendants' and Third-Party Defendant Cochran's Motion in Limine to Preclude Testimony of Mr. Hall** [Docket No. 135 (redacted); Filed March 16, 2012] (the "Motion").  The Avedon Defendants submitted a Response in opposition to the Motion on April 9, 2012 [#153], and Plaintiffs/Counterclaim Defendants and Third-Party Defendant Cochran (collectively, "Plaintiffs") filed a Reply on April 23, 2012 [#158].  The Motion is ripe and referred to this Court for resolution [#156].  For the reasons stated below,

1

IT IS HEREBY **ORDERED** that the Motion [#135] is **DENIED**.

## I. Background

The Court incorporates by reference the Summary of the Case stated in the Recommendation on Plaintiff/Counterclaim Defendants' and Third-Party Defendant Cochran's Motion for Partial Summary Judgment, dated August 15, 2012 [#161].  The instant Motion concerns the Avedon Defendants' (also referred to as "Avedon") damages expert, Mr. David Hall.  *See* [#135].  The Avedon Defendants offer the expert opinion of Mr. Hall to testify that Plaintiffs' and Third-Party Defendants' "alleged misconduct" resulted in these parties' obtaining a cost savings of $4,309,000 in development and marketing of the Zoo Fan.  *See Suppl. Rep.*, [#136-3].

Plaintiffs raise two grounds for the exclusion of Mr. Hall's testimony pursuant to Fed. R. Civ. P. 702.  First, Plaintiffs contend that Mr. Hall's expert opinion is unreliable because he does not connect the asserted cost savings to a specific counterclaim or to specific misconduct. [#137-1] at 10-14; [#158] at 3-10.  Second, Plaintiffs aver that Mr. Hall's expert opinion is unreliable because it is based on insufficient and unverified financial data. [#137-1] at 15-19; [#158] at 10-14.

Avedon counters Plaintiffs' arguments by asserting, in a nutshell, that Mr. Hall's qualifications are not in dispute, and Plaintiffs' contentions are not a basis for excluding his testimony, as the proper challenge to Mr. Hall's expert opinion is by cross-examination and the presentation of contrary evidence at trial.  *See* [#153] at 10.  The Court agrees.

2

## II.  Analysis

### A.    General Principles of Federal Rule of Evidence 702

"Admission at trial of expert testimony is governed by Fed. R. Evid. 702, which imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  The gatekeeper function "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  The district court's discretion in admitting or excluding expert testimony under *Daubert* is broad, "both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability."  *Id.* at 1223.

Rule 702 provides the foundational requirements for admission of expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> (a)    the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Adopted in response to *Daubert*, Rule 702 was revised effective December 1, 2000 and December 1, 2011.

Under the current version of Rule 702, a witness' qualifications are no longer sufficient foundation, standing alone, to admit expert testimony. In addition to showing that the witness has appropriate qualifications, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *See Dodge*, 328 F.3d at 1222. To be reliable, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Rule 702 anticipates that, if challenged, the factual foundation supporting the specific testimony will be provided by the proponent of the witness. *Dodge*, 328 F.3d at 1222. However, the proponent need not prove that "the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the method used by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.* In the Tenth Circuit, determination of the sufficiency of the foundation for admission of expert testimony requires factual findings; an evidentiary hearing is a method that the Court may use to make factual findings, but this obligation may be satisfied without a hearing if the Court has sufficient evidence to make a determination.[1] *Dodge*, 328 F.3d at 1222,

---

[1] A Rule 702 hearing is meant to address only the foundational requirement for challenged opinions, and the Court rules on only the specific challenges raised by the party opposing the opinions. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "The Court does not determine the weight or persuasiveness of the opinion, nor consider other evidentiary objections[, such as relevance, *etc.*,] which are more appropriately addressed at trial." *Id.* Instead, "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

1228.

### 1.    Burden of Proof

The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 592 n.10). The proponent is not required to prove that the opinion is objectively correct. *Mitchell*, 165 F.3d at 781. Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222. The burden on the proponent of the expert is heavy, as any inadequacy in the proof on any of Rule 702's elements may render the entire opinion inadmissible. *Mitchell*, 165 F.3d at 782.

### 2.    Rule 702 Analysis

In the Tenth Circuit, the Rule 702 analysis has two steps: (1) the Court must determine whether the expert is qualified to give the proffered opinion, and (2) the Court must examine whether the opinion itself is reliable. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). The second step of the analysis focuses on the process or means by which the witness developed the opinion, *i.e.*, the methodology or application of principles. *Id.* "This analytical framework makes the Rule 702 determination more *opinion-centric* than *expert-centric*." *Crabbe*, 556 F. Supp. 2d at 1221 (emphasis in original).

Here, the qualifications of Mr. Hall are not in dispute. Thus, the Court accepts Mr.

Hall as qualified, and proceeds to evaluate the reliability of Mr. Hall's opinion.  Additionally, the Court concludes that the record before it presents adequate evidence for the following findings, thus an evidentiary hearing is not necessary.

Rule 702 requires that the means or method by which the testimony or opinion is derived be reliable.  As such, the Rule sets out three specific requirements: (1) a showing that the "testimony is based upon sufficient facts or data," (2) a showing that "the testimony is the product of reliable principles and methods," and (3) a showing that "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(b)-(d).

### a.    Sufficient Facts and Data

The proponent of the opinion must first show that the witness gathered "sufficient facts and data" to formulate the opinion.  In the Tenth Circuit, assessment of the sufficiency of the facts and data used by the witness is a quantitative, rather than a qualitative, analysis.  Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments; *see also United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005).  That is to say, the Court does not examine whether the facts obtained by the witness are themselves reliable; whether the facts used are qualitatively reliable is a question of the weight that should be given to the opinion by the fact-finder, not the admissibility of the opinion.  *Lauder*, 409 F.3d at 1264.  Instead, "this inquiry examines only whether the witness obtained the amount of data that the methodology itself demands."  *Crabbe*, 556 F. Supp. 2d at 1223.

### b.    Methodology

Methodology, or the requirement that an opinion be derived from reliable principles or methods, involves two related inquiries: (1) identification of the methodology the witness

6

used to reach the opinion; and (2) determination of whether the methodology is generally considered "reliable" in the field in which the expert works.  *Crabbe*, 556 F. Supp. 2d at 1222.  These inquiries are solely factual, and "the proponent of the opinion must establish both inquiries by sufficient, competent evidence."  *Id.*

The first inquiry simply requires that the witness explain how he or she reached the opinion at issue – a simple explanation of the process normally is sufficient.  *Id.*  The second inquiry, whether the methodology is reliable, requires that the court assess whether that method is "scientifically valid."  *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002); *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).  A determination that a method is "scientifically valid" requires an inquiry into whether it is a scientific or logical method that can be replicated and validated.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Depending on the methodology at issue, courts have the wide discretion to consider a variety of appropriate factors in assessing reliability.   These factors, include, but are not limited to: (1) whether the methodology is one that can be tested or falsified – that is, whether the witness' approach can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the method or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to the use of the method; (4) whether there are standards controlling the operation of the technique; and (5) whether the method or approach has "general acceptance" in the "relevant scientific community."  *See Daubert*, 509 U.S. at 593-94, *Kumho Tire*, 526 U.S. at 149-50.

However, the above factors are not exclusive nor dispositive.  *Crabbe*, 556 F. Supp.

7

2d at 1223. For instance, a methodology that is not peer reviewed or tested may still be considered reliable if only because it is considered a generally-accepted practice in the discipline. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004). However, a methodology may have almost universal acceptance in a particular discipline, but the Court may find that the entire discipline itself (*e.g.,* astrology) is not reliable. *Kumho Tire*, 526 U.S. at 151. A court must consider and balance the factors in light of each other, and also considering the particular circumstances of the case. For example, where the methodology is unique or lacks general acceptance in the relevant field, the need for the witness to validate the theory through more extensive testing increases. *See, e.g., MagneTek*, 360 F.3d at 1212. On the other hand, an otherwise reliable methodology does not instantly become unreliable merely because the witness did not test it thoroughly in all applicable situations. *See Bitler*, 400 F.3d at 1236. Instead, once a court is satisfied that the methodology is generally reliable, suggestions that the witness should have engaged in additional testing to achieve certainty in his or her conclusions simply go to the weight of the opinion, not its admissibility. *Id.*

> ### c.   Application

The final step requires that the witness reliably apply the methodology to the facts and data he or she has obtained. Once again, "the requirement that the witness 'reliably' do so is not an invitation to a court to assess the worth of the opinion itself." *Crabbe*, 556 F. Supp. 2d at 1223. Instead, the Court's inquiry focuses on "whether the witness followed the dictates of the methodology in considering the facts and data." *Id.* In assessing this reliability, the Court may consider a variety of factors, including, but not limited to: (1) whether the expert employed the same degree of intellectual rigor in formulating the opinion

as he or she would be expected to employ in his or her own professional life; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (or, whether the gap between the analytical data and the opinion proffered is too large); and (3) whether the expert adequately accounted for obvious alternative explanations. *See generally Kumho Tire*, 526 U.S. at 152; *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Bitler*, 400 F.3d at 1233.

Finally, even if an expert is deemed qualified and his or her opinions are considered reliable, admissibility still requires a determination that the opinions are relevant. That is, the Court must consider "whether expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citation omitted). Courts have routinely excluded expert testimony that was based on nothing more than speculation. *See, e.g., Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as "tentative and speculative"). However, "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong facts such as time or surprise favoring exclusions." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) (quoting *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

**B.     Admissibility of Mr. Hall's Expert Opinion**

Following an extensive review of Mr. Hall's initial and supplemental expert reports and the evidence provided by the parties with the briefing of the instant Motion, the Court concludes that Mr. Hall's opinion is admissible, and that the jury should decide whether his

opinion is correct.

### 1.    Sufficient Facts and Data

First, the Court finds that Mr. Hall based his testimony on quantitatively sufficient facts and data.  *See Lauder*, 409 F.3d at 1264 n.5 (Rule 702's "reference to 'sufficient facts or data' calls for a quantitative rather than qualitative analysis).  Mr. Hall identified 122 individual documents as "Facts & Data Considered" in forming his initial expert report, including deposition transcripts and exhibits, filings in this lawsuit, and a significant variety of financial documents.  *See Report Appendix C*, [#137-2] at 30-31.  Mr. Hall listed twenty additional documents that he considered when authoring the supplemental report.  *See Supp. Report Appendix C-S*, [#137-3] at 18.  Mr. Hall further described the reviewed facts and data in the Affidavit included with Avedon's response to the Motion.  *Aff.*, [#153-1] at 1-6.  Mr. Hall attested that "Avedon's general ledger trial balances, payroll reports, and financial statements were the most complete source of information related to Avedon's actual costs (incurred and paid) for the period relevant to [the] analysis," which he determined after reviewing Avedon's financial statements and accounting records and discussing such items with Avedon's accountant, Mr. Bob Hottman.  *Id.* at 4.

### 2.    Methodology

Second, the Court finds that Mr. Hall's testimony is the product of reliable methodology.  As stated, the Court must first identify the methodology Mr. Hall used to reach the opinion, and then determine whether the methodology is generally considered "reliable" in Mr. Hall's field of expertise.  The first part of the inquiry simply requires that the witness explain how he or she reached the opinion at issue.  In his initial report, Mr. Hall stated that "[t]he unjust enrichment damages methodology includes analyzing the costs

savings that a defendant enjoyed as a result of its alleged misconduct." [#137-2] at 9. To this end, Mr. Hall explained that "it is reasonable to compare Avedon's cost of developing the product and market to the Opposing Parties' product and market development costs." *Id.* Mr. Hall noted that the cost savings analysis could be relevant "for a value of trade secrets approach or measure." *Id.* The Court thus finds that Mr. Hall identified his methodology as the unjust enrichment damages methodology and a cost savings analysis, in satisfaction of the first part of this determination.

Regarding the second part of the inquiry, whether the methodology is reliable, the Court must assess whether that method is "scientifically valid." "Courts have used a wide variety of methods to measure damages in trade secret cases, including lost profits, unjust enrichment and reasonable royalty." *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1243 (8th Cir. 1994) (citations omitted). "In general, both lost profits and unjust enrichment theories have been widely accepted." *Pioneer Hi-Bred Int'l*, 35 F.3d at 1244; *see also* Colo. Rev. Stat. §7-74-104(1) ("Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation . . . ."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 3522416, at *6-*7 (D. Colo. Sept. 1, 2010) (allowing expert testimony "about the amount of unjust enrichment accruing to [defendant] from its misappropriation of [Plaintiff's trade secret]"). Thus, the second part of the evaluation is also satisfied, and the Court concludes that Mr. Hall's opinion is derived from a methodology generally accepted as reliable.

### 3. Application

Finally, the Court finds that Mr. Hall reliably applied the cost-savings methodology to the facts of this case. Again, "the requirement that the witness 'reliably' [applied the

methodology to the facts and data he obtained] is not an invitation to a court to assess the worth of the opinion itself"; instead, the Court must focus its inquiry on "whether the witness followed the dictates of the methodology in considering the facts and data." *Crabbe*, 556 F. Supp. 2d at 1223. In conducting this inquiry, the Court may consider whether Mr. Hall unjustifiably extrapolated from an accepted premise to an unfounded conclusion, whether the gap between the analytical data and the opinion proffered is too large, and whether he adequately accounted for obvious alternative explanations. *See generally Kumho Tire*, 526 U.S. at 152; *Bitler*, 400 F.3d at 1233.

As explained above, Plaintiffs argue that Mr. Hall "is unable to tie the claimed cost savings to any specific claim, conduct or trade secret." [#158] at 2. Avedon counters, averring that it "identified the trade secrets that were misappropriated, including marketing strategy, financial information, and customer information, and Hall has calculated the reduced marketing and development costs incurred by [Plaintiffs] as they brought the competing Zoo Fans to market, based on his review of the financial statements of both Avedon and Zoo Fans." [#153] at 7. Review of Mr. Hall's initial and supplemental reports demonstrates to the Court that Avedon is correct. First, Plaintiffs' contention that Mr. Hall's opinion on damages is not tied to any specific claim, conduct or trade secret is a red herring. Defendants explicitly state counterclaims for unjust enrichment and misappropriation of trade secrets, and the opinion manifestly applies to both. Moreover, if the Recommendation is adopted, both counterclaims will survive the motion for partial summary judgment.[2] *See also Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR,

---

[2] Plaintiffs concede that "[a] cost savings method may be appropriate for measuring unjust enrichment damages for misappropriation of trade secrets." [#158] at 3 (citation omitted).

2012 WL 461805, at *3, *3 n.9 (D. Kan. Feb. 13, 2012) (in approach to determining unjust enrichment damages, "the plaintiff bears the initial burden of showing the defendant's sales and the defendant has the burden of showing any portion of those sales that should not be attributable to the misappropriation of trade secrets, and to show expenses.") (citing *e.g.*, *Cartel Asset Mgmt v. Ocwen Fin. Corp.*, 249 F. App'x 63, 78-79 (10th Cir. 2007) (placing burden of showing apportionment to establish actual damages in misappropriation of trade secrets case on unjust enrichment theory on defendant); *Petters v. Williamson & Assocs., Inc.*, 210 P.3d 1048, 1054 (Wash. App. 2009) (same); *Agilent Techs., Inc. v. Kirkland*, No. 3512-VCS, 2010 WL 610725, at *30 (Del. Ch. Feb. 18, 2010) (same)).

Unlike the court in *Children's Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008 (8th Cir. 2001), which is cited by Plaintiffs in support of their position, it is clear to this Court that more than "the *ipse dixit* of the expert" connects Mr. Hall's expert opinion to the facts at issue.  245 F.3d at 1018.  Mr. Hall reviewed numerous financial (and other) documents from both Plaintiffs and Avedon, utilized a well-recognized methodology, and produced a calculation reflecting an informed comparison of "Avedon's cost of developing the product and market to the Opposing Parties' product and market development costs."  It does not appear to the Court that Mr. Hall unjustifiably extrapolated from an accepted premise to an unfounded conclusion, nor does the Court perceive a too-large gap between the analytical data and the opinion proffered.

"[R]ejection of expert testimony is the exception rather than the rule," and Mr. Hall's opinion is better challenged at trial through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Cartel Asset Mgmt.*, 2010 WL 3522416 at *2 (citations omitted).  "To the extent [Mr. Hall] failed to consider or

13

account for other factors that may be considered under applicable law, that failure goes to the weight to be accorded to his opinion and not to its admissibility." *Id.* at *7. The Court reiterates that it is not making any findings as to whether Mr. Hall's testimony is correct; the correctness of Mr. Hall's conclusions and the qualitative adequacy of the facts and data underlying his opinion are questions for the jury. At present, the Court finds that Mr. Hall's expert opinion passes muster pursuant to Rule 702, and therefore denies the Motion.

### III. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that Plaintiffs/Counterclaim Defendants' and Third-Party Defendant Cochran's Motion in Limine to Preclude Testimony of Mr. Hall [#135] is **DENIED.**

IT IS FURTHER **ORDERED** that a Final Pretrial Conference is rescheduled for **October 18, 2012**, at **11:00 a.m.** in Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.

IT IS FURTHER **ORDERED** that the proposed pretrial order shall be submitted on or before **October 11, 2012**. The proposed pretrial order may be submitted in WordPerfect or pdf format and shall be emailed to *Mix_Chambers@cod.uscourts.gov*.

The proposed pretrial order shall also be filed on the docket. Attorneys and/or pro se parties not participating in ECF shall submit their proposed pretrial order on paper to the Clerk's Office. However, if any party in this case is participating in ECF, it is the responsibility of that party to submit the proposed pretrial order pursuant to the District of Colorado ECF Procedures.

The parties shall prepare the proposed pretrial order in accordance with the form

which may be downloaded from the Forms section of the court's website at http://www.cod.uscourts.gov/Home.aspx.

Dated: August 15, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge